IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-24-197-PRW |
| ) | |
| ANTHONY LAWRENCE GRIZZARD, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is Defendant's Motion to Suppress Evidence and Brief in Support (Dkt. 21) and the United States's Response (Dkt. 24). The Court heard evidence and arguments on the matter at a hearing on September 11, 2024. For the reasons that follow, the Motion (Dkt. 21) is **DENIED**.

*Background*

On January 28, 2024, at around 1:05am, Oklahoma City Police Officer Andre Lizar pulled over an SUV for making an improper right turn. The vehicle was driven by Shenika Bond, and contained two passengers, Tammy Hopkins and Defendant Anthony Grizzard. Hopkins was seated in the front passenger seat. Grizzard was seated behind Bond, in the second row driver's side seat. After stopping the car, Officer Lizar asked Bond for her driver's license, but she told him that she did not have one. Officer Lizar credibly testified that he immediately smelled the odor of marijuana coming from the car, and from that point forward was investigating the traffic violation for which he originally stopped the car, Bond's driving without a license, and also a potential marijuana offense.

1

Because she could not lawfully drive the vehicle, Officer Lizar asked Bond to exit the driver's seat and accompany him to his police cruiser, which she did. As he walked her back to his car, Officer Lizar asked Bond to show him her waistband so that he could check for weapons. Bond complied. He also asked her if there was anything illegal in the car, like guns or drugs. Bond said no.

While Officer Lizar was speaking with Bond in his police cruiser, another police officer, Officer Wallace, asked Hopkins and Grizzard for their identification. Officer Lizar began the process of determining the status of Bond's license—ultimately discovering that it was suspended—while also, with the help of other officers, running background and warrant checks on all three occupants.

During Officer Lizar's interaction with Bond in his squad car, Officer Lizar asked Bond three times whether there was any "weed or weapons" in the car, to which she responded with "no" each time. Officer Lizar testified that he asked about "weed" specifically because of the odor he had detected coming from the car. Officer Lizar asked Bond for consent to search her car. Bond said "I don't care, but what would be the reason to check the car?" Officer Lizar responded, "to make sure that there's no weed or weapons." Bond then explained to him that even if there was weed in the car, she had a medical marijuana card, but that she didn't have it with her. Officer Lizar then exited the car and shut the door. As he was doing this, Bond said "but I don't think that there is probable cause to be checkin' my car. You don't smell no drugs." Officer Lizar testified that he did not hear Bond make this statement, and his body camera footage confirms that it is inaudible due to him getting out of the car and shutting the door. Nor is it clear from

the footage that Bond was directing this statement to Officer Lizer, as she makes it while looking to her right while Officer Lizer is by this point outside the window to her left.

Hopkins and Grizzard were removed from the car and placed in the backseat of another officer's patrol unit for the search. The interaction with Grizzard as he is removed from the vehicle is cordial. He is smoking a small cigar and asks if he can "hit it" one more time before putting it out to get into the squad car. The officer allows him to do so and then seats him in the patrol unit. The officers later discovered that the backseat camera of that patrol unit recorded Hopkins and Grizzard expressing concern that their marijuana would be found, and Grizzard begging Hopkins to "take" the gun for him. Grizzard promises Hopkins he will bail her out of jail, and tells her that he has plenty of money for her if she will take responsibility for the gun.

Officer Lizar and Officer Wallace proceeded to search Bond's vehicle, discovering a loaded pistol with a machine gun switch in the second row passenger seat of the car, to the right of where Grizzard was sitting. Officer Lizar testified that Officer Wallace also told him that he found a small quantity of marijuana in the car, but no one was charged for that possession, and the marijuana was not documented in Officer Wallace's incident report. Grizzard and Hopkins were placed under arrest in connection with the gun. The stop and subsequent search lasted about fifteen minutes.

On May 7, 2024, Grizzard was charged by Indictment (Dkt. 1) with two counts: (1) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and (2) unlawful possession of a machinegun, in violation of 18 U.S.C. § 922(o). On August 5, 2024,

Grizzard filed the present Motion (Dkt. 21), challenging his detention and the subsequent discovery of the gun as unlawful fruits of that detention.

## *Legal Standard*

The Fourth Amendment protects against unreasonable searches and seizures.[1] Fourth Amendment rights are personal, however, so passengers of a vehicle without any possessory interest in the vehicle generally lack standing to directly challenge a search of the vehicle.[2] But a passenger defendant "may nonetheless contest the lawfulness of his own detention and seek to suppress evidence found in the vehicle as the fruit of the illegal detention."[3] Suppressing evidence on this basis requires that a defendant "first establish that the detention did violate his Fourth Amendment rights."[4] Then, the defendant "bears the burden of demonstrating a 'factual nexus between the illegality and the challenged evidence.'"[5] In satisfying the second prong, the defendant must show that the evidence would not have been found "but for *his*, and only his, unlawful detention."[6] If the defendant successfully satisfies both prongs, the burden shifts to the government to show that the evidence is "not 'fruit of the poisonous tree.'"[7]

---

[1] *Elkins v. United States*, 364 U.S. 206, 222 (1960).

[2] *Rakas v. Illinois*, 439 U.S. 128, 148–49 (1978).

[3] *United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000) (citations omitted).

[4] *Id.* (citing *United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir. 1996)).

[5] *Id.* (quoting *United States v. Kandik*, 633 F.2d 1334, 1335 (9th Cir. 1980)).

[6] *United States v. DeLuca*, 269 F.3d 1128, 1133 (10th Cir. 2001) (emphasis in original).

[7] *Nava-Ramirez*, 210 F.3d at 1131.

*Analysis*

As to the first prong of *Nava-Ramirez*, Grizzard argues that his detention was unlawful because the officers extended the duration of the stop beyond its initial purpose when the officers looked into Grizzard's criminal history and then searched Bond's car. The Government responds that Grizzard was not unlawfully detained because the officers were investigating potential crimes and had both probable cause and consent to search Bond's car, which amply justified the short detention of the occupants of the car, while that investigation was conducted.

The Court finds Grizzard was not unlawfully detained because the officers had probable cause to search the vehicle from the time that Officer Lizar first approached the vehicle and smelled the odor of marijuana coming from the car. Officers can prolong a stop beyond its initial purpose if they have "independent reasonable suspicion of criminal wrongdoing on behalf of the seized individual that justifies further investigation."[8] And the Tenth Circuit has held that the odor of marijuana is sufficient by itself to establish probable cause.[9]

Officer Lizar provided credible testimony that he smelled an odor of marijuana upon first approaching the vehicle. The credibility of Officer Lizar's testimony is further underscored by the self-incriminating statements Grizzard and Hopkins made while the

---

[8] *United States v. Cortez*, 965 F.3d 827, 833 (10th Cir. 2020) (citations omitted).

[9] *United States v. Snyder*, 793 F.3d 1241, 1245 (10th Cir. 2015); *United States v. Johnson*, 630 F.3d 970, 974 (10th Cir. 2010) (citing *United States v. Downs*, 151 F.3d 1301, 1301 (10th Cir. 1998)).

search was occurring, where they discuss the fact that there is marijuana in the car. Moreover, while not included in Officer Wallace's police report, Officer Wallace told Officer Lizar that he in fact found marijuana in the vehicle, the credibility of which is equally underscored by Grizzard and Hopkins self-incriminating statements confirming that there was marijuana in the car. Based on Officer Lizar's credible testimony and the evidence corroborating that testimony, the Court finds that there was probable cause to conduct a search of the car. For this reason, Mr. Grizzard's temporary detention during the stop and search was not unlawful.

The officers also had Ms. Bond's consent to search the car. "An investigative detention may be permissibly expanded beyond the reason for its inception if the person stopped consents to that expansion."[10] "For consent to be valid, two conditions must be met: '(1) There must be a clear and positive testimony that consent was unequivocal and specific and freely given; and (2) The government must prove consent was given without duress or coercion, express or implied.'"[11] Grizzard's sole argument as to consent is that Bond's consent was not unequivocal.

Though the video of Bond being asked for consent has some portions that are inaudible, Bond can clearly be heard saying "I don't care" in response to Officer Lizar asking for her consent. The Tenth Circuit has held that "I don't care" can constitute valid

---

[10] *United States v. Wood*, 106 F.3d 942, 946 (10th Cir. 1997) (citing *United States v. McKneely*, 6 F.3d 1447, 1450 (10th Cir. 1993)).

[11] *United States v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007) (quoting *United States v. Butler*, 966 F.2d 559, 562 (10th Cir. 1992)).

consent.[12] While Bond subsequently asks Officer Lizar why he wants to search her car, she never walks back her initial consent, even when Officer Lizar tells her that he wants "to check for weed or weapons." Nor does Bond's statement that "even if" there is weed in the car, she has a medical marijuana card constitute a withdrawal of her consent. Rather, that statement seems to assume that the car will be searched and Bond is simply offering an explanation for any marijuana that might be found. The same is true of her saying "But I don't think that there is probable cause to be checkin' my car. You don't smell no drugs." Officer Lizar testified that he did not hear Bond's final statement. And in Officer Lizar's body camera footage, the statement is difficult to hear. The Court again finds that Officer Lizar's testimony is credible. But even had Officer Lizar heard the statement, it could not be construed as a withdrawal of consent. Because Bond gave valid consent for the search, and none of her statements heard by Officer Lizar following that consent could be understood as revoking her consent, the officers had consent to search the vehicle. As the officers had both probable cause and consent to search Bond's vehicle, Grizzard has failed to show that his detention was unlawful.

Even if Grizzard had satisfied the first prong of *Nava-Ramirez*, he would be unable to satisfy the second prong because he did not show that the gun would not have been discovered but-for *his* detention.[13] When applying the second prong of *Nava-Ramirez* in cases involving a passenger of a vehicle, courts often inquire into whether the defendant

---

[12] *United States v. Polly*, 630 F.3d 991, 998 (10th Cir. 2011).

[13] *See DeLuca*, 269 F.3d at 1133.

7

would have been permitted to leave *in the vehicle*.[14] Here, the answer is no. Mr. Grizzard would not have been permitted to take Ms. Bond's car with him if he was permitted to leave. Nor did he ever ask to leave. The officers would have searched the vehicle regardless of Grizzard's continued presence at the scene, and the gun would have been found on the seat next to where he had been sitting, so Grizzard's detention was not a but-for cause of the search. Accordingly, there is no factual nexus between Grizzard's detention and the discovery of the gun.

### *Conclusion*

For these reasons, the Motion to Suppress (Dkt. 21) is **DENIED**.

**IT IS SO ORDERED** this 12th day of September 2024.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[14] *Nava-Ramirez*, 210 F.3d at 1131. *See also United States v. Zavala*, 195 Fed. Appx. 746, 750 (10th Cir. 2006) (unpublished); *United States v. Salas*, 248 Fed. Appx. 906, 910 (10th Cir. 2007) (unpublished).